UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO. 09-11491-RGS

DALE ROBINSON

v.

KATHLEEN CARNEY, HARI ARISETTY,
CITY OF MILTON,[1] and JOHN DOES 1 and 2

MEMORANDUM AND ORDER ON
DEFENDANTS' MOTIONS TO DISMISS

January 20, 2010

STEARNS, D.J.

On February 20, 2009, Dale Robinson, acting pro se, filed this civil rights action in Suffolk Superior Court against Massachusetts State Troopers Kathleen Carney and Hari Arisetty.[2] Arisetty removed the case to this court on September 9, 2009, on federal question grounds. On October 9, 2009, Arisetty filed a motion to dismiss, and on November 16, 2009, Carney followed suit. While Robinson has opposed Arisetty's motion, he has not filed an opposition to Carney's motion.

---

[1]Although Robinson names the "City" of Milton as a defendant, Milton is in fact a town.

[2]Robinson additionally names two "John Doe" State Police officers. A plaintiff has a right "to proceed against a 'John Doe' defendant whose identity can only be established through discovery. This principle of fairness recognizes that a plaintiff in the heat of a confrontation with police may not know or have the opportunity to learn the identity of the alleged wrongdoer. Once that identity is discovered, a plaintiff is permitted under the liberal regime of Rule 15 to substitute the true defendant for the fictitious 'John Doe.'" Wilson v. Town of Mendon, 294 F.3d 1, 7 n.16 (1st Cir. 2002). A district court, however, is not obligated to "wait indefinitely for [a plaintiff] to take steps to identify and serve . . . 'unknown' defendants." Glaros v. Perse, 628 F.2d 679, 685 (1st Cir. 1980).

BACKGROUND

The allegations of the Complaint, which are deemed to be true for present purposes, are as follows. On February 10, 2006, Robinson, a black male, was driving south on Route 93 outside of Boston. He was pulled over by Carney and Arisetty at a Braintree exit. When Arisetty asked Robinson for his driver's license and registration, Robinson "clumsily manipulated" his cell phone. Arisetty ordered Robinson to put down the phone and produce his license and registration. Robinson responded, "I'm just starting the record function on my phone to record this transaction."[3] Arisetty expressed no objection.

Robinson gave his license to Arisetty, who returned to his cruiser. After a record check, Arisetty cited Robinson for failing to signal, a lane violation, and a seat belt violation. Arisetty explained the citations to Robinson and informed him of his right to contest the citations. See Mass. Gen. Laws ch. 90C, § 3. Arisetty then returned to his patrol car. A minute later, Trooper Carney rushed up to Robinson's car and began an assault. Carney broke Robinson's satellite radio antennae and its input jack. Carney, "like a mad woman doped up on Methamphetamine," screamed at Robinson, saying, "You

---

[3]Robinson opens his Complaint with a discourse on the alleged use of racial profiling by police in making traffic stops. He states that in Massachusetts, there is "immense pressure upon law abiding, unarmed, black males to conjure legal methods to increase their survival rate in police traffic stops." Complaint ¶ 7. Robinson states that he employs a "black male traffic stop survival method," pursuant to which he announces to investigating officers that he is going to record the stop on his cell phone. Id. ¶ 8 He further explains that "[w]hether the officer than [sic] or impliedly (by not objecting) consented, or rejected the pronouncement was irrelevant, as the purpose was to mentally condition the officer to not kill black males for the traffic stop moment. In fact, the plaintiff's phone had no external record function; thus, recording the transaction was impossible." Id.

fuckin' recorded a police officer, I'll fuckin' kill you.  It's fucking illegal to record a police officer, I'll fuckin' kill you."  Carney then attempted to wrest Robinson's phone from his hand, jamming the buttons and breaking the phone's camera function.  Robinson informed Carney that Arisetty had not objected to the recording and that, in any event, the phone did not actually have a recording capacity.  Carney told Robinson that he could appeal the citations.  She also refused to give Robinson her name.[4]

Robinson immediately proceeded to the State Police Barracks in Milton Blue Hills to file a complaint. Ten days later, on February 20, 2006, Robinson was served with a criminal complaint for illegal wiretapping.  See Mass. Gen. Laws. ch. 272, § 99.  The complaint appeared to have been written up by Carney on February 10, 2006 (the day of the stop).  An incident report written by Arisetty and dated February 13, 2006, was also attached.  The charges were dismissed "well after February 20, 2009" by the Norfolk County District Attorney's Office for lack of probable cause.[5]

This litigation followed.  Robinson asserts claims for: (1) violation of the federal civil rights law, 42 U.S.C., § 1983 (malicious prosecution); (2) common-law assault and battery (against Carney only); and (3) common-law intentional infliction of emotional distress.

## DISCUSSION

---

[4]According to Robinson, in December of 2008, Carney was relieved of her weapon and taken off road duty after being accused by another citizen of using excessive force during an arrest.

[5]No precise date is provided in the Complaint.  In his opposition to Arisetty's motion, Robinson uses a 2009 date.  However, because the Complaint was filed on February 20, 2009, and the charge had already been dropped, the court presumes that Robinson intended the date as "February 20, 2006."

Arisetty and Carney have each moved to dismiss the Complaint as barred by the statute of limitations. They argue that the facts giving rise to Robinson's claims transpired on February 10, 2006, and are subject to a three-year statute of limitations.

1. Assault and Battery

Mass. Gen. Laws ch. 260, § 2A, provides that all actions of tort "shall be commenced within three years next after the cause of action accrues." See Poy v. Boutselis, 352 F.3d 479, 483 (1st Cir. 2003). Because the day of the incident itself is not counted, see id. n.2, Robinson's assault and battery claim against Carney was required to have been filed by February 11, 2009. Because the Complaint was filed on February 20, 2009, it is barred by the statute of limitations.[6]

2. Malicious Prosecution

Robinson's claim of malicious prosecution is brought under the Federal Civil Rights Act, 42 U.S.C. § 1983. As section 1983 does not specify a statute of limitations, a court is to look to the statute of limitations governing the most closely analogous state-law tort. See McIntosh v. Antonina, 71 F.3d 29, 33-34 (1st Cir. 1995). In this case, the relevant Massachusetts statute is the three-year statute of limitations for personal injury actions. See Neves v. McSweeney, 241 F.3d 46, 51 (1st Cir. 2001). Contrary to defendants' argument that the statute of limitations for malicious prosecution began to run on the night

---

[6]In his opposition to Arisetty's motion, Robinson alludes to the "continuing violation" doctrine. The doctrine is an equitable exception that saves otherwise time-barred claims, provided they are based on an ongoing series of acts anchored to a related violation that is not time-barred. See O'Rourke v. City of Providence, 235 F.3d 713, 730 (1st Cir. 2001). The assault and battery claim is not saved by this doctrine, as it is was a discrete event having no connection to any ongoing and repetitive harm.

of the incident, "[a] cause of action for malicious prosecution does not accrue until the criminal proceedings have terminated in the plaintiff's favor." Heck v. Humphrey, 512 U.S. 477, 489 (1994). Although the court has not been told the date on which the charges against Robinson were dismissed, it can be confidently inferred to have occurred after February 20, 2006.[7] Defendants, therefore, have failed to establish a successful statute of limitations defense.

Robinson's victory, however, is short-lived. To state a viable claim under section 1983, a plaintiff must establish that a defendant acted under color of state law while depriving him of a federal constitutional right. See Roche v. John Hancock Mut. Life Ins. Co., 81 F.3d 249, 254 (1st Cir. 1996). There is no dispute that defendants acted under color of state law. The issue is whether in bringing the wiretap complaint against Robinson, defendants deprived him of a right secured by the United States Constitution or by federal law. See Golden State Transit Corp. v. City of Los Angeles, 493 U.S. 103, 106 (1989) (a violation of a right that is not secured by federal law is not actionable under section 1983).

The secured right asserted by Robinson derives presumably from the Fourteenth Amendment's guarantee of due process of law.[8] Deprivations of a constitutional right caused by the random, unauthorized acts of state officials, however, are not actionable under section 1983 where state law provides an adequate post-deprivation remedy. See Parratt v. Taylor, 451 U.S. 527, 539 (1981) (negligent acts); Hudson v. Palmer, 468 U.S.

---

[7]Robinson received notice of the charges against him on February 20, 2006.

[8]Robinson's Complaint provides little specificity on the point.

517, 533 (1984) (random intentional acts). State common-law tort procedures are almost uniformly held sufficient to satisfy the due process requirements of Parratt. See Albright v. Oliver, 510 U.S. 266, 284 (1994) (plurality opinion) (Kennedy, J., concurring) ("The commonsense teaching of Parratt is that some questions of property, contract, and tort law are best resolved by state legal systems without resort to the federal courts, even when a state actor is the alleged wrongdoer."). A resident of Massachusetts aggrieved by a malicious prosecution has resort to a common-law cause of action. See Lincoln v. Shea, 361 Mass. 1, 2 (1972). Consequently, a section 1983 constitutional claim of malicious prosecution based on a violation of procedural (or substantive) due process is not viable. See Roche, 81 F.3d at 256; Meehan v. Town of Plymouth, 167 F.3d 85, 88 (1st Cir. 1999).[9]

   2. Intentional Infliction of Emotional Distress

---

[9]The First Circuit, based on its reading of Justice Ginsburg's concurring opinion in Albright, has acknowledged the possibility of a "non-garden variety" section 1983 malicious prosecution claim grounded on the Fourth Amendment. Neves v. McSweeney, 241 F.3d at 53-54. The Fourth Amendment, of course, requires a seizure of the person, an element missing from Robinson's claim. Justice Ginsburg's argument was that a person released on bail after an arrest "remains apprehended, arrested in his movements, indeed 'seized' for trial" until he is judicially discharged. Albright, 510 U.S. at 279 (Ginsburg, J., concurring). Compare Murphy v. Lynn, 118 F.3d 938, 946 (2d Cir. 1997) (adopting Justice Ginsburg's view) and Gallo v. City of Philadelphia, 161 F.3d 217, 225 (3d Cir. 1998) (same, although recognizing that the practical effect is to "constitutionaliz[e] the tort of malicious prosecution") with Reed v. City of Chicago, 77 F.3d 1049, 1052 n.3 (7th Cir. 1996) (rejecting it) and Neves, 241 F.3d at 56 (same). Cf. Britton v. Maloney, 196 F.3d 24, 29 (1st Cir. 1999) (plaintiff's prosecution entailed no restrictions on his liberty other than the legal obligation to appear in court). As Robinson was never arrested, but simply given citations for civil motor vehicle infractions, under even the most generous reading of Justice Ginsburg's concurrence, he does not have a viable Fourth Amendment malicious prosecution claim. (Robinson does not allege that the troopers lacked probable cause or reasonable suspicion to initiate the stop).

Robinson's claim for intentional infliction of emotional distress is barred by the statute of limitations to the extent that it is based on the traffic stop of February 10, 2006. See Salcedo v. Town of Dudley, 629 F. Supp. 2d 86, 100 (D. Mass. 2009) (Saylor, J.). If the emotional distress is alleged to have been caused by the filing of the wiretapping complaint, Robinson has failed to state a claim. The tort of intentional infliction of emotional distress requires a plaintiff to show

> (1) that the actor intended to inflict emotional distress or that he knew or should have known that emotional distress was the likely result of his conduct; (2) that the conduct was extreme and outrageous, was beyond all possible bounds of decency and was utterly intolerable in a civilized community; (3) that the actions of the defendant were the cause of the plaintiff's distress; and (4) that the emotional distress sustained by the plaintiff was severe and of a nature that no reasonable man could be expected to endure it.

Agis v. Howard Johnson Co., 371 Mass. 140, 144-145 (1976) (internal quotation marks and citation omitted). "The standard for making a claim of intentional infliction of emotional distress is very high." Doyle v. Hasbro, Inc., 103 F.3d 186, 195 (1st Cir. 1996). "It is for the court to determine, in the first instance, whether the defendant's conduct may reasonably be regarded as so extreme and outrageous as to permit recovery, or whether it is necessarily so. Hence, the second prong of the tort, that of assessing the extent and nature of the defendant's conduct, can be decided by the court without becoming a jury question." Caputo v. Boston Edison Co., 924 F.2d 11, 14 (1st Cir. 1991) (internal citation omitted). Robinson has not alleged any stressful event other than the receipt of the criminal complaint in the mail. Putting in motion events that cause the service of court process is not as a matter of law, particularly in a society as accustomed to litigation as

7

ours (as Robinson's own complaint against defendants illustrates), an action so "extreme and outrageous," as to support a claim of intentional inflection emotional distress.[10]

## ORDER

For the foregoing reasons, defendants' motions to dismiss will be <u>ALLOWED</u>.  The claims against the non-moving defendants will also be <u>DISMISSED</u>.  The Clerk will enter judgment for defendants and close the case.

SO ORDERED.

/s/ Richard G. Stearns

_____
UNITED STATES DISTRICT JUDGE

---

[10]Because Robinson has neither stated any facts under which the Town of Milton could be liable (the officers are state troopers), nor stated any facts under which the two "John Doe" defendants could be held liable, the court will also <u>DISMISS</u> these claims.